IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTWAN BROWN,<br><br>        Plaintiff,<br>v.<br><br>WARDEN DAVID OWENS,<br><br>        Defendant. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 16-cv-04497(JBS-AMD)<br><br>**OPINION** |

APPEARANCES:

Antwan Brown, Plaintiff Pro Se
#338948C-105635
KB1 4 South Industrial Boulevard
Bridgeton, NJ 08302

Anne E. Walters, Esquire
Assistant County Counsel
Office of Camden County Counsel
520 Market Street, 14th Floor
Camden, NJ 08102-1375
Attorney for Defendant David Owens

**SIMANDLE, District Judge:**

**I.**    **INTRODUCTION**

This matter comes before the Court on the unopposed motion for summary judgment ("the Motion") of defendant Warden David Owens ("Defendant" or "Owens") (ECF No. 23.)[1] The Motion is being considered on the papers pursuant to Fed. R. Civ. P. 78(b). For the reasons set forth below, the motion for summary judgment upon the merits shall be granted.

---

[1] The notation "ECF" as used in this Opinion refers to the numbered docket entries for this case.

1

## II. BACKGROUND

### A. PLAINTIFF'S ALLEGATIONS

Plaintiff Antwan Brown ("Plaintiff") was a pretrial detainee at the Camden County Correctional Facility ("CCCF") from March 2015 (ECF No. 23-9) through July 2017. (ECF No. 22.) He is proceeding pro se with a 42 U.S.C. § 1983 civil rights complaint ("the Complaint") regarding the conditions of confinement during his stay at CCCF. (ECF No. 1.)

On July 15, 2016, Plaintiff filed an Inmate Grievance Form, claiming as follows: "I'm having serious problems with dealing with the [CCCF] housing unit overcrowded situation. I do know and understand this to be a major civil rights violation, and despite many warnings/complaint[s], the administration here continues to pack this place in as a matter of practice and policy." (ECF No. 1 at 8.) Plaintiff further "humbly request[ed] that the administration here rectif[y] the overcrowding ASAP." (*Id.*)

Ten days later, Plaintiff filed the Complaint against Defendant and an application to proceed in forma pauperis ("IFP Application"). (ECF No. 1.) In his Complaint, Plaintiff alleges "pervasive overcrowding" and "other deleterious conditions" at CCCF. (*Id.* at 6.) First, as to the supposedly overcrowded conditions of confinement, Plaintiff contends that he was confined in "a unit originally constructed to hold 28 inmates [but] due to severe overcrowding [wa]s housing 40 inmates." (ECF No. 1 at 5.)

2

According to the Complaint, Plaintiff was "forced to live in an 8x10 cell with 2 other inmates [that] was originally designed to hold 2 people but due to overcrowding a 3rd and sometimes 4th man sleeps on the floor with nothing more than a mattress next to the cell['s] toilet." (*Id*. at 6.) Second, as to the "other deleterious conditions" of which Plaintiff complains, he describes: "(1) inadequate 'dayroom space'[;] (2) mold and insect infested showers[;] (3) failure to train correction officers and other staff to deal adequately with the overcrowded and unhealthy conditions at CCCF[;] [and] (4) triple celling [that] leaves an unconscionably small amount of unencumbered space within the cells." (*Id*.)

Plaintiff seeks $1,000,000 in punitive damages and $1,000 in compensatory damages "for each day [Plaintiff] was unlawfully housed in a (3) man as well as a (4) man cell." (*Id*. at 7.)

**B.  PROCEDURAL HISTORY**

On August 9, 2016, the Honorable Robert B. Kugler granted Plaintiff's IFP Application and directed the Clerk of the Court to reopen the case and file the Complaint. (ECF No. 2.) After screening Plaintiff's Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 1915A, Judge Kugler ordered that Plaintiff's Complaint be allowed to proceed in its entirety against Defendant. (ECF No. 3.) On September 14, 2016, the case was reassigned to the undersigned and Magistrate Judge Ann Marie Donio for all further proceedings. (ECF No. 6.)

Defendant filed an Answer to Plaintiff's Complaint on April 5, 2017 (ECF Nos. 14 and 15) and an Amended Answer on April 6, 2017. (ECF No. 17.) On May 17, 2017, Magistrate Judge Donio issued a scheduling order requiring that all pretrial factual discovery be concluded by August 31, 2017. (ECF No. 20.) Defendant served Plaintiff with his: (1) April 12, 2017 Fed. R. Civ. P. 26 Disclosures (ECF No. 23-5 at 2-4); (2) May 18, 2017 document requests (ECF Nos. 23-5 at 5; 23-6 at 2-4); and (3) May 18, 2017 interrogatories. (ECF Nos. 23-5 at 5; 23-6 at 5-13.) Plaintiff has not served Defendant with any discovery responses or disclosures. (ECF Nos. 23-3 at ¶6; 23-2 at 5.) On August 21, 2017, Defendant filed the motion for summary judgment now pending before the Court. (ECF No. 23.) Plaintiff did not file any opposition to the motion, which remains unopposed.

## III. **DISCUSSION**

Defendant moves for summary judgment on three grounds: (1) Plaintiff's failure to adduce evidence from which a reasonable fact finder could find unconstitutional conditions of confinement; (2) the Complaint's mootness, in light of the Sixth and Amended Final Consent Decree in the recent class action, *Dittimus-Bey, et al. v. Camden Cty. Corr. Facility, et al.*, Docket No. 05-cv-0063 (D.N.J.) ("*Dittimus-Bey*"); and (3) Defendant's entitlement to qualified immunity. This Court finds for reasons discussed in Part IV that the mootness doctrine does

not apply to Plaintiff's claims for monetary relief, but that for reasons discussed in Part V, Defendant is entitled to summary judgment by virtue of the lack of a genuine dispute of material fact. In any event, because the Court finds that summary judgment is proper, there being no proof of a constitutional violation, the Court need not address the qualified immunity defense.

**IV. WHETHER THE FINAL CONSENT DECREE IN *DITTIMUS-BEY* RENDERS PLAINTIFF'S COMPLAINT MOOT**

In addition to Defendant's meritorious argument that Plaintiff has not adduced any evidence of Fourteenth Amendment violations from CCCF conditions of confinement (*see* Section V(B) of this Opinion below), Defendant also seeks summary judgment on the ground that the Sixth and Final Amended Consent Decree in *Dittimus-Bey* has rendered Plaintiff's Complaint moot. (ECF No. 23-2 at 8-9.)

The doctrine of "mootness" derives from the limitation upon federal judicial power in Article III of the Constitution limiting jurisdiction to actual cases and controversies. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013). Thus, federal courts are limited to resolving "the legal rights of litigants in actual controversies," *Id., quoting Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982) (quoting *Liverpool, New York & Philadelphia*

*S.S. Co. v. Comm'rs of Emigration*, 113 U.S. 33, 39 (1885)). Thus, "[a]n action is rendered moot when an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit at any point during the litigation." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citations omitted). The test for Article III mootness is whether it has become "impossible for a court to grant any effectual relief whatever to the prevailing party." *In re ICL Holding Co., Inc.*, 802 F.3d 547, 553 (3d Cir. 2015) (citing *Chafin v. Chafin*, 568 U.S. 165 (2013)). Therefore, "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016).

It is true that Plaintiff does not contest the *Dittimus–Bey* litigation and its effects, as characterized in Defendant's undisputed Statement of Material Facts. For example, Camden County and CCCF officials agreed to consent decrees in *Dittimus–Bey* to take measures to improve the conditions at the CCCF, such as by retaining criminal justice planning firms to investigate and recommend solutions to the CCCF's overcrowding and staffing problems. (ECF No. 23-8 at ¶¶19, 23-25.) Defendant's undisputed facts show significant, systemic improvements as to both overcrowding and related conditions at CCCF. Plaintiff is not presently confined at CCCF, and the successful *Dittimus–Bey* class action litigation has placed the challenged conditions at CCCF

6

under review, resulting in appreciable changes for those confined at CCCF. That these facts from *Dittimus-Bey* are uncontested here by Plaintiff Brown is merely further demonstration that summary judgment is appropriate.

The Court is not persuaded, however, that the final consent decree in *Dittimus-Bey* moots Plaintiff's case. Plaintiff, a class member in *Dittimus-Bey*, is bound by the final judgment in which class members are deemed to release claims for injunctive and declaratory relief against Camden County and its officers and employees. This means that Mr. Brown, like all class members, could no longer obtain injunctive relief beyond that authorized in the Consent Decree for jail conditions during the class period. But that litigation did not involve individual inmates' or detainees' claims or class claims for money damages, which must be sought and proved on an individual claim basis. In other words, the Final Consent Decree in *Dittimus-Bey* did not adjudicate or deal with any individual money damage claims. Indeed, claims for money damages were not sought in *Dittimus-Bey* and inmates were free to pursue individual claims for monetary relief under 42 U.S.C. § 1983 by filing an individual complaint, as Mr. Brown has done. Accordingly, to the extent that Defendant argues that Plaintiff's claim for money damages is mooted by the final Consent Decree in *Dittimus-Bey*, the mootness argument lacks merit and is denied.

## V. MOTION FOR SUMMARY JUDGMENT

### A. STANDARD OF REVIEW

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Where, as in this case, the nonmoving party bears the burden of persuasion at trial, the moving party may be entitled to summary judgment by observing that there is an absence of evidence to support an essential element of the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Rahman v. Taylor*, 2013 WL 1192352, at *2-3 (D.N.J. Mar. 21, 2013). Fed. R. Civ. P. 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. A plaintiff opposing a defendant's motion for summary judgment has the burden of coming forward with evidence, not mere allegations, that would raise a genuine dispute of material fact and suffice to enable a reasonable jury, giving all favorable inferences to the plaintiff as the party opposing summary judgment, to find in plaintiff's favor at trial. Rule 56(c)(1)(A) further provides that, to create a genuine issue of material fact, the

nonmovant must do so by:

> citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials.

Fed. R. Civ. P. 56(c)(1)(A). However, failure to respond to a motion for summary judgment "is not alone a sufficient basis for the entry of a summary judgment." *Anchorage Assocs. v. Virgin Island Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). The Court still must determine, even for an unopposed summary judgment motion, whether the motion for summary judgment has been properly made and supported and whether granting summary judgment is appropriate. *Id*.

In order to grant Defendant's unopposed motion for summary judgment, where, as here, "the moving party does not have the burden of proof on the relevant issues, . . . the district court must determine that the deficiencies in opponent's evidence designated in or in connection with the motion entitle the moving party to judgment as a matter of law." *Id*. at 175. Additionally, pursuant to Local Civ. R. 56.1(a), Defendant's statements of material facts, having not been admitted, denied or addressed by Plaintiff in any other fashion, are deemed undisputed for the purposes of this Motion.

### B. PLAINTIFF HAS FAILED TO COME FORWARD WITH ANY EVIDENCE SUPPORTING HIS CLAIM OF UNCONSTITUTIONAL CONDITIONS OF CONFINEMENT

As stated above, the evidentiary record in this case consists of what Defendant attached to the Motion. Plaintiff has provided the Court only with pleadings that contain a mix of facts and legal conclusions. The Complaint attaches no affidavits or certifications; its only exhibit is the Inmate Grievance Form referenced above. (ECF No. 1 at 8.) Plaintiff did not respond to Defendant's discovery requests, nor has Plaintiff made any discovery demands on Defendant. Mere pleadings such as Plaintiff's Complaint are insufficient to defeat summary judgment. *Rahman*, 2013 WL 1192352, at *3. The ample time for completing factual discovery has expired. (ECF No. 20.)

Defendant asserts in his uncontroverted Statement of Material Facts that Plaintiff was initially incarcerated in CCCF on March 4, 2015 (ECF No. 23-3 (Statement of Facts) at 2; *see also* ECF No. 23-2 (Def. Br.) at 9) and was a member of the certified class in the matter of *Dittimus-Bey*. (ECF Nos. 23-3 at ¶9; 23-7 at 1-22.) In *Dittimus*-Bey, the plaintiffs had alleged several conditions of "unhealthy, unsafe, and unsanitary environment . . . [a]s a direct result of severe overcrowding and understaffing" at CCCF. (ECF No. 23-7 (Amended Complaint) at 8; ECF No. 23-2 (Def. Br.) at 6 ("Plaintiffs in *Dittimus-Bey* alleged that policies and practices created unconstitutional conditions, which included overcrowded

cells [and] inadequate sleeping arrangement[s] . . .").) As noted in the *Dittimus-Bey* Sixth and Amended Final Consent Decree, CCCF's population "reached a crisis point in early 2013" (ECF No. 23-8 (Consent Decree) at ¶35), after which the daily population at CCCF was closely monitored and managed over time to appropriate levels for resolution of the *Dittimus-Bey* claims. (*Id*. at ¶36–37.)

In this case, Defendant does not appear to contest Plaintiff's claim that he was housed at CCCF with two or three other men in a cell designed for only two men total (ECF No. 1 at 6). Thus, the Court will assume, for purposes of this Motion only, that Plaintiff was "triple celled" at some point during the period of his March 2015 through July 2017 incarceration. However, as Defendant notes, the *Dittimus-Bey* Sixth and Final Amended Consent Decree "indicates [that] the overcrowding issues were being addressed during Plaintiff's incarceration at the CCCF." (ECF No. 23-2 (Def. Br.) at 12.)

Defendant argues that, based on these facts and on Plaintiff's failure to provide evidence supporting his contentions, Plaintiff fails to state a claim or raise a dispute of material fact as to any Fourteenth Amendment violation. (ECF No. 23-2 (Def. Br.) at 9-14.) Specifically, Defendant contends that Plaintiff has adduced: no proof of unconstitutional conditions (*id*. at 10-12); no proof of injury or damages (*id*. at 11, 12); no evidence that Defendant intended to punish Plaintiff or was deliberately indifferent to

(or was even aware of risk of serious harm from) the allegedly constitutional violations (*id*. at 11, 12-13); and no evidence of Defendant's individual participation or acquiescence in the alleged wrongs (*id*. at 13-14), as required by *Bell v. Wolfish*, 441 U.S. 520, 535 (1979), *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007), and *Rode v. Dellaciprete*, 845 F.2d 1195 (3d Cir. 1988).

Defendant's factual assertions, which are deemed undisputed, indicate that entry of summary judgment is appropriate. The mere fact that an individual is lodged temporarily in a cell with more persons than its intended design does not, on its own, rise to the level of a constitutional violation. *See Rhodes v. Chapman*, 452 U.S. 337, 348-50 (1981) (holding double-celling by itself did not violate Eighth Amendment); *Carson v. Mulvihill*, 488 F. App'x 554, 560 (3d Cir. 2012) ("[M]ere double-bunking does not constitute punishment, because there is no 'one man, one cell principle lurking in the Due Process Clause of the Fifth Amendment'") (quoting *Bell*, 441 U.S. at 542)). More is needed to demonstrate that such crowded conditions, for a pretrial detainee, "shock the conscience," and thus violate due process rights. *See Hubbard v. Taylor*, 538 F.3d 229, 233 (3d Cir. 2008) (noting that due process analysis requires courts to consider whether the totality of the conditions "cause[s] inmates to endure such genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned

to them"). Here, Plaintiff has adduced no evidence that the conditions he experienced while "triple celled" (ECF No. 1 at 6) in a two-man unit were so severe that they "shock the conscience." Similarly, being a detainee in a unit housing two or three other men in a cell designed for only two men total (*id.*) does not, standing alone, rise to the level of a due process violation.

Defendant further asserts that, as a result of the *Dittimus-Bey* class-action litigation addressing overcrowding and conditions of confinement at CCCF, there has been a "reduction in [CCCF's] population and improvement of other conditions in [CCCF]." (ECF No. 23-2 at 8.) Indeed, as a result of the *Dittimus-Bey* litigation[2], there has been a significant lessening of the crowding in CCCF and improvements in other prison conditions. (ECF No. 23-8 (Consent Decree) at ¶¶36-37.) When the *Dittimus-Bey* litigation commenced in 2005, CCCF's average daily population was 1,848 inmates; by May of 2010, the average monthly population reached an all-time low of 1,232 inmates. (ECF No. 23-8 at ¶¶33-34.) Three months prior to Plaintiff's release from CCCF in September 2016 (ECF No. 23-2 at 8-9; ECF No. 7), CCCF's population as of December 9, 2016 was at

---

[2] Order Approving Amended Final Consent Decree, *Dittimus-Bey v. Taylor*, No. 05-0063 (D.N.J. June 30, 2017); *see also Dittimus-Bey v. Taylor*, 2013 WL 6022128 (D.N.J. Nov. 12, 2013); *Dittimus-Bey v. Taylor*, 244 F.R.D. 284 (2007). The Court does not imply that Plaintiff's claims for monetary relief in this case (ECF No. 1 at 6-7) are barred by the class action settlement of *Dittimus-Bey*, since that case only involved claims for injunctive relief.

1,160 -- in a facility designed for 1,267 persons. (ECF No. 23-8 (Consent Decree) at ¶¶33-34, 36.) While it is conceivable that an individual inmate could be subjected to unconstitutional conditions even at a jail that is continuously monitored and operating within reasonable capacity limits, Plaintiff has not adduced any evidence that he has actually suffered such deprivation.

These undisputed facts refute any claim that Defendant or other supervisors at CCCF were "deliberately indifferent" to the alleged constitutional violations, which is the mental culpability that must be proven to find liability under § 1983. *See Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 250 (3d Cir. 2007) (describing the "deliberate indifference" standard). There is no evidence of conduct that would tend to show deliberate indifference on the part of Defendant. Thus, Defendant is entitled to summary judgment on Plaintiff's overcrowded conditions of confinement Fourteenth Amendment claim.

In addition, Plaintiff's vague and cursory allegations regarding inadequate "dayroom" space and mold and insect infested showers (ECF No. 1 at 6) essentially complain "of an inconvenient and uncomfortable situation"; however, "the Constitution does not mandate comfortable prisons." *Carson*, 488 F. App'x at 560 (quoting *Rhodes*, 452 U.S. at 349). Notably, in neither claim does Plaintiff identify a single "basic human need" which he has been denied.

*Rhodes*, 452 U.S. at 347 (citing *Hutto v. Finney*, 437 U.S. 678, 685-88 (1978)). Without more, the Court cannot say that a reasonable fact finder could conclude that these conditions deprived Plaintiff of any basic human needs. *See Carter v. Owens*, 2017 WL 4107204, at *10 (D.N.J. July 21, 2017) (finding that, without additional details about the nature of prisoner's inadequate "dayroom" space claim, prisoner "has not demonstrated that denial of access to it was sufficiently serious to deprive him of the minimal measure of life's necessities"); *Williams v. Meisel*, 2014 WL 4744561, at *4 (E.D. Pa. Sept. 24, 2014) (finding that mold in showers did not amount to a constitutional violation because the mold did not expose inmates to an unreasonable risk of serious damage to future health). For example, Plaintiff adduces no evidence that he was sickened by the conditions he describes, that the crowding led to any assault by another inmate, or that he was significantly sleep-deprived due to these conditions. Accordingly, Defendant is entitled to summary judgment on Plaintiff's Fourteenth Amendment claims involving alleged inadequate "dayroom" space and mold and insect infestation.

C. **WHETHER CLAIMS AGAINST DEFENDANT MUST BE DISMISSED BECAUSE HE IS ENTITLED TO QUALIFIED IMMUNITY**

In addition to the grounds discussed in Sections IV and V(B) of this Opinion, Defendant also requests that this Court

grant him summary judgment on the basis that he is entitled to qualified immunity.

Qualified immunity protects government officials from liability as long as their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010). The qualified immunity test is two-pronged: whether the pleadings allege that constitutional violation occurred, and whether "reasonable officials could fairly have known that their alleged conduct was illegal." *Saucier v. Katz*, 533 U.S. 194, 121 (2001); *Larsen v. Senate of the Commonwealth of Pa.*, 154 F.3d 82, 86 (3d Cir. 1998).

Because it is clear that Plaintiff fails to demonstrate a basis for a constitutional violation, there is no need to address whether a reasonable official would know his conduct was unlawful, due to no proof of such illegality.

**VI.  CONCLUSION**

For the reasons stated above, the Defendant's motion for summary judgment is granted. An accompanying Order will be entered.

**March 22, 2018**          **s/ Jerome B. Simandle**
Date                        JEROME B. SIMANDLE
                            U.S. District Judge